**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNEST EUGENE BRADY, husband;
MARRITTA KAY BRADY, wife; JAMES
DEAN BRADY, husband; FLOSSIE
MARIE BRADY, wife,
            *Plaintiffs-Appellees,*

v.

ABBOTT LABORATORIES, an Illinois
corporation (including Ross
Products Division of Abbor
Laboratories, improperly named),
            *Defendant-Appellant,*

and

ABC ENTITIES, I-X; JOHN/JANE
DOES, I-X; ROSS PRODUCTS, a
Division of Abbott Laboratories,
Inc.,
            *Defendants.*

No. 04-15257

D.C. No.
CV 01-00886 JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
November 15, 2005—San Francisco, California

Filed December 29, 2005

Before: Jerome Farris, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge Farris

16813

**COUNSEL**

John C. Lemaster, Ryley Carlock & Applewhite, Phoenix, Arizona, for the defendant-appellant.

Brad K. Keogh, Phoenix, Arizona, for the plaintiffs-appellees.

**OPINION**

TASHIMA, Circuit Judge:

This is a diversity action arising under Arizona law and stems from Abbott Laboratories' ("Abbott") construction of a

basement beneath its manufacturing facility. After a bench trial, the district court awarded judgment in favor of plaintiffs, Ernest Eugene Brady, Marritta Kay Brady, James Dean Brady, and Flossie Marie Brady (collectively, the "Bradys") for the illegal removal of groundwater, causing the water table below the Bradys' adjacent property to become permanently suppressed, resulting in the destruction of the Bradys' pecan orchards.

Abbott appeals, contending that the district court erred in: (1) concluding that Abbott owed the Bradys a duty under the common law doctrine of reasonable use; (2) finding that the applicable statute of limitations did not bar the Bradys' claims; (3) finding that the Bradys had proven their damages with sufficient certainty; and (4) awarding the Bradys punitive damages. We have jurisdiction under 28 U.S.C. § 1291. Because we hold that Abbott owed the Bradys no duty under the common law doctrine of reasonable use, we reverse. We do not reach Abbott's other contentions.

## Background

Abbott and the Bradys are neighboring landowners in Casa Grande, Arizona. Abbott operates a manufacturing facility, while the Bradys are pecan farmers. In the fall of 1997, Abbott sought to expand its manufacturing facilities and began excavating its property in order to build a large underground storage structure. In connection with the project, Abbott applied for and received an emergency de-watering permit from the Arizona Department of Water Resources ("ADWR"). In its permit application, Abbott sought approval to remove a total of 2.07 acre-feet of groundwater from the aquifer underneath its property. The permit specified that Abbott was to pump the groundwater into an on-site retention basin where it could eventually re-absorb into the aquifer. The ADWR also required Abbott to report its de-watering activity on an annual basis.

Once work began, Abbott quickly encountered more water than expected. Abbott expanded its pumping activity in order to keep the excavation free from water during construction, but failed to seek a permit to extract additional groundwater. As a result of Abbott's additional pumping, Abbott's on-site retention basins filled to capacity and Abbott then channelled the excess groundwater into a ditch that ran off the property. While there is some dispute regarding how much water was discharged into the ditch, it is undisputed that Abbott did not transport any of the groundwater off its property for use on other land. Abbott's pumping ended around March, 1998, at which point Abbott had extracted in excess of 122 acre-feet of groundwater.

Abbott acknowledges that it violated the scope of its de-watering permit by removing approximately 122 acre-feet of groundwater. Abbott also admits that it incorrectly reported its de-watering activity to the ADWR by listing no de-watering activity in 1997 or 1998, and failing to file a report in 1999. In order to settle its violations with the ADWR, Abbott agreed to pay a fine of $6,508.50 to the ADWR.

The district court properly found that prior to Abbott's de-watering, the water table below the Bradys' property was at 16 feet below ground level. Following Abbott's de-watering, the water table below the Bradys' property became permanently suppressed to 32 feet, which is the depth of the basement on the Abbott property. The Bradys' pecan trees drew water through feeder roots that were dependent on the relatively shallow water table (as opposed to being irrigated). Abbott's de-watering activity lowered the water table, depriving the Bradys' orchard of water, and ultimately killed the pecan trees.

Once they learned of Abbott's de-watering activity, the Bradys commenced this action for negligence and nuisance. Following a four-day bench trial, the court entered judgment in favor of the Bradys on both claims. It found that Abbott

had breached its duty in tort under the common law doctrine of reasonable use. The court awarded the Bradys $618,766 in compensatory damages and $618,766 in punitive damages, for a total recovery of $1,237,532. On appeal, Abbott argues that the district court erred because the common law doctrine of reasonable use permitted Abbott to withdraw percolating groundwater, without incurring liability to the Bradys, so long as it was taken for the reasonable use of Abbott's property.[1]

## Discussion

[1] The common law doctrine of reasonable use governs the use of percolating groundwater in Arizona. *Bristor v. Cheatham*, 255 P.2d 173, 178-79 (Ariz. 1953).[2] Whether Abbott owed the Bradys a duty under the common law doctrine of reasonable use is a question of law, which we review *de novo*. *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir. 1991).

[2] In *Bristor*, the Arizona Supreme Court explained that the doctrine of reasonable use permits the extraction of groundwater

> so long as it is taken in connection with a beneficial enjoyment of the land from which it is taken. If it is diverted for the purpose of making reasonable use of the land from which it is taken, there is no liability

---

[1]We note that the Bradys bring only common law tort claims. At oral argument, they expressly disclaimed reliance on any statutory claim under the Arizona Groundwater Code. Thus, the question of whether a private right of action for negligence *per se* can be implied under Ariz. Rev. Stat. § 45-518(A) is not before us.

[2]While the Bradys denominate their claims as claims for negligence and nuisance, the substance of both claims is the same. Because the common law doctrine of reasonable use is the controlling legal standard governing a landowner's rights to percolating groundwater underneath its property, *see Bristor*, 255 P.2d at 178-79, the determinative inquiry is whether Abbott violated its duty under the doctrine of reasonable use.

> incurred to an adjoining owner for a resulting dam-
> age.

*Bristor*, 255 P.2d at 180. The court noted that the doctrine does not "prevent any reasonable development of [one's] land by mining or the like, although the underground water of neighboring proprietors may thus be interfered with or divert-ed." *Id.* (quoting *Canada v. City of Shawnee*, 64 P.2d 694, 697 (Okla. 1936)). Extracting groundwater and using it for the benefit of off-site land, however, is not a permitted reasonable use. *Id.*

This distinction is well illustrated by *Evans v. City of Seat-tle*, 47 P.2d 984 (Wash. 1935), cited with approval by the Ari-zona Supreme Court. *Bristor*, 255 P.2d at 178. In *Evans*, the City of Seattle owned a gravel pit from which it produced gravel for its roads. *Evans*, 47 P.2d at 984. The plaintiffs owned land adjacent to the City's gravel pit and depended on spring and stream water for domestic purposes and irrigation. *Id.* The City constructed a ditch leading away from its proper-ties to drain percolating water seeping into the gravel pit so that the City could extract more gravel from the pit. *Id.* As a result of the City's de-watering, the plaintiffs suffered a total loss of their water supply. *Id.* The Washington Supreme Court denied relief, holding that the "City was making a reasonable use of its own property, and that the draining of the gravel pit was for the reasonable and proper purpose of extracting the gravel for use." *Id.* at 988.

By contrast, in *Farmers Investment Co. v. Bettwy*, 558 P.2d 14 (Ariz. 1976), the defendant mining companies extracted groundwater near farms owned by plaintiffs and transported that water to *other* lands where it was used for mining activi-ties. *Id.* at 16. The court, relying on *Bristor*, recognized that the reasonable use "rule does not prevent the extracion [sic] of ground water subjacent to the soil so long as it is taken in connection with a beneficial enjoyment of the land *From which it is taken*." *Id.* at 20 (quoting *Bristor*, 255 P.2d at 180)

(emphasis in *Bettwy*). However, because the water was not withdrawn to benefit the land from which it was taken, but was transported to and used on other property, the court concluded that the defendants' use was not reasonable. *Id.* at 21.

**[3]** Here, the district court relied on *Bettwy* to conclude that Abbott was not making a reasonable beneficial use of its land when it extracted the groundwater. That was error. For unlike the defendants in *Bettwy*, Abbott did not withdraw groundwater from its property for use "off the lands from which they are pumped." *Bettwy*, 558 P.2d at 20. Rather, Abbott withdrew the groundwater for the purpose of expanding its manufacturing facilities, which was an improvement of the land from which the water was withdrawn; therefore, it was a permitted beneficial use under Arizona law. *See Bristor*, 255 P.2d at 180; *see also Evans*, 47 P.2d at 987. While some of the groundwater was channeled off of Abbott's property, this is immaterial because Arizona law does not require that the withdrawn water be "used," so long as it is extracted for the reasonable beneficial use of Abbott's *land. See Bristor*, 255 P.2d at 180; *see also Evans*, 47 P.2d at 987.

**[4]** Accordingly, because we conclude that Abbott's dewatering activity was protected by the common law doctrine of reasonable use, the Bradys' negligence and nuisance claims must fail. The judgment of the district court is reversed and the case is remanded with directions to enter judgment for Abbott.

**REVERSED and REMANDED.**

---

FARRIS, Circuit Judge, concurring:

I agree with Judge Tashima that *Bristor v. Cheatham* is controlling. If we were not bound to follow the Arizona Supreme Court, I would urge that Arizona's reasonable use

doctrine no longer depend solely upon whether the use of the water benefits the property from which it is extracted. Accounting for the amount of water used, considering the utility of competing water uses, and acknowledging the rights of adjacent water users seems especially important in an arid, rapidly growing state like Arizona.

In authorizing strict water permit restrictions as well as public notice and the opportunity for administrative hearings on proposed water permits, the Arizona legislature has indicated that Arizona water users must consider the rights of adjacent property-holders. Ariz. Rev. Stat. §§ 45-518(A)(4), 45-523 (2005). Unfortunately for the Bradys and other Arizona water plaintiffs, the Arizona legislature has not provided an express private cause of action, nor has the Arizona Supreme Court had occasion to imply one, against those who, for the benefit of their own property, unreasonably and illegally interfere with the water rights of their neighbors.

I therefore concur in the majority opinion.